UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ANTHONY GRANT,**<br><br>Defendant. | Case No. 25-MJ-141 |

**EMERGENCY MOTION TO STAY DEFENDANT'S RELEASE
AND *DE NOVO* REVIEW OF MAGISTRATE JUDGE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Magistrate Judge Moxila A. Upadhyaya issued on August 22, 2025. Specifically, the United States requests the Court: (i) stay Magistrate Judge Upadhyaya's order releasing Defendant; and (ii) grant a *de novo* review of Magistrate Judge Upadhyaya's denial of the United States's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (serious drug offense carrying a maximum term of imprisonment of ten years or more) and (E) (felony involving possession or use of a firearm). The Court has the authority to grant a stay to consider this emergency *de novo* review of the Magistrate Judge's order of release.

Despite having nine previous convictions related to firearms and narcotics, Defendant now stands before this Court charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (18 U.S.C. § 922(g)(1)) and Unlawful Possession With Intent to Distribute 28 Grams or More of a Mixture of Substance Which Contains Cocaine Base) (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii)). (ECF No. 1).

1

Defendant's offense conduct, prior convictions, and history of non-compliance with court orders show that: (i) he cannot be trusted to follow the Court's pretrial release conditions; and (ii) he will continue to expose himself to guns, drugs, or other dangerous activities if he is not detained. This is only exacerbated by the fact that the proposed third-party custodians have a history of failing to keep Defendant out of trouble. Accordingly, pursuant to 18 U.S.C. § 3142(g), Defendant should be detained pending trial.

## BACKGROUND

### *The Instant Offense*

On August 8, 2025, at approximately 3:05 a.m., members of the United States Park Police, Alcohol, Tobacco, and Firearms ("ATF"), and Enforcement and Removal Operations ("ERO"), in conjunction with the Executive Order 14252 Task Force, were patrolling the area of Georgia Ave NW, Washington, D.C., to enforce local narcotics laws. This area is known to Task Force members as an open-air drug market, where numerous individuals are known to sell and use illegal narcotics.

During the patrol, Detective Sergeant Giblin ("D/Sgt. Giblin"), ATF Special Agent Khoury (SA Khoury), and ERO Officer Kovacic observed a grey Nissan Altima traveling northbound on Georgia Avenue and then take a left onto Kenyon St NW. The vehicle then turned left onto Sherman Street NW without using a turn signal. The officers also observed that the vehicle's license plate was unreadable, appearing to have been sprayed with a reflective coating commonly used to obscure plates from traffic enforcement cameras in the District of Columbia. D/Sgt. Giblin conducted a traffic stop on the vehicle at 2900 Sherman Street NW and approached it, identifying the license plate as a Wisconsin tag bearing WH2271H.

Upon approaching the driver's side window, D/Sgt. Giblin immediately detected the odor of burnt marijuana emanating from inside the vehicle. He made contact with the driver and sole

occupant, identified via a D.C. driver's license (9577387) as the Defendant, Anthony Leonard Grant. D/Sgt. Giblin asked Defendant if there was anything in the vehicle that he should be aware of, such as weapons or drugs. Defendant replied, "No." When asked about the odor of marijuana, Defendant stated that he had just gotten off work and had smoked some marijuana.

D/Sgt. Giblin asked Defendant to step out of the vehicle to continue the investigation. Upon doing so and moving Defendant to the rear of the vehicle, D/Sgt. Giblin still smelled marijuana, this time emanating from Defendant's person. D/Sgt. Giblin and SA Khoury then conducted a search of the vehicle. During the search, they located a black and silver Smith & Wesson 9mm handgun bearing serial number PDB3549, loaded with 15 rounds in the magazine, inside a duffle bag in the trunk.

Also found in the duffle bag were male clothing items appearing to match Defendant's size, and a clear plastic bag containing multiple smaller baggies filled with white and brown rock-like substances. SA Khoury inspected the firearm and observed that it: (i) appeared to be fully functional; (ii) was designed to expel a projectile by the action of explosive; (iii) has a barrel length of less than 12 inches; and (iv) can be fired by the use of a single hand.

A police records check of Defendant revealed he did not have a license to carry a concealed weapon in the District of Columbia as required by law. Defendant also did not have a firearm registered as required by law. Further investigation showed the firearm had been reported stolen out of Prince George's County on January 21, 2025.

A criminal history check revealed that Defendant had been convicted:

- In Washington, DC Superior Court case number 2015-CF2-007105 of Attempted Possession with Intent to Distribute a Controlled Substance (Heroin) and sentenced to 24 months incarceration, 12 months suspended, and 3 years of supervised release;
- In Washington, DC Superior Court case number 2011-CF2-020216 of Unlawful Possession of a Firearm (Prior Conviction) and Committing an Offense During Release and sentenced to 40 months incarceration and 3 years of supervised release;

- In Prince George's County, Maryland Circuit Court case number CT111012A of Possession of a Controlled Dangerous Substance and Possession of a Regulated Firearm, and sentenced to 1 year confinement and 2 years unsupervised probation (Possession of a Controlled Dangerous Substance), and 18 months confinement (Possession of a Regulated Firearm);
- In Washington, DC Superior Court case number 2005-FEL-007434 of Attempted Possession with Intent To Distribute a Controlled Substance (Cocaine), Attempted Carrying a Pistol Without a License Outside the Home or Business, Possession of an Unregistered Firearm/Unlawful Possession of a Firearm or Destructive Device, and Unlawful Possession of Ammunition, and sentenced to 15 months incarceration and 5 years supervised release (Attempted Possession with Intent To Distribute a Controlled Substance (Cocaine)), 90 days incarceration (Attempted Carrying a Pistol Without a License Outside the Home or Business), 6 months (Possession of an Unregistered Firearm/Unlawful Possession of a Firearm or Destructive Device), and 6 months (Unlawful Possession of Ammunition);
- In Washington, DC Superior Court case number 2002-FEL-005105 of Attempted Distribution of Cocaine and sentenced to 360 days incarceration.

Accordingly, Defendant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

During a search incident to arrest, D/Sgt. Giblin detected an object that did not feel natural in Defendant's groin area. When questioned, Grant refused to say what the object was. A subsequent search revealed a clear plastic baggie containing a white and brown rock-like substance. Inside this larger bag were multiple smaller baggies containing a similar substance. The substances were field tested and returned positive results for cocaine. The total quantity recovered from Defendant's vehicle and his person was 143.5 grams, with an estimated street value of $14,500. Also recovered from Defendant's right front pocket was $901 in US currency with various denominations.

Based on D/Sgt. Giblin's training and experience, the quantity, packaging, and variety of U.S. currency denominations found on Defendant were consistent with possession with intent to distribute rather than simple possession.

## ARGUMENT

**I. This Court Has the Authority to Grant the Motion to Stay Release Pending a *De Novo* Review**

The power to stay an order of release is directly related to a district court's authority to review a release order of a magistrate judge. *See, e.g.*, *United States v. Brigham*, 569 F.3d 220, 230 (5th Cir. 2009) ("given that the issue being reviewed involves a person's release from custody pending further legal proceedings, the absence of stay authority could render the district court's review power illusory."). An alternative interpretation would risk allowing the charged defendant the opportunity to "harm[] the community or disappear[] by the time the district court's ruling is rendered and detention is ordered" if the district court determines to order the defendant detained. *Id.*; *see also United States v. Salazar-Andujo*, 599 F. Supp. 3d 491, 494 (W.D. Tex. 2022); *United States v. Rosales-Villegas*, No. 23-CR-00044, 2023 U.S. Dist. LEXIS 59776, at *5-6, 7 n.1 (D. Nev. Apr. 4, 2023) ("The Court's decision is also based on unanimous caselaw. As the Government notes, 'stays of release are so commonplace and uncontroversial that they are often relegated to a sentence or two in the procedural history of an opinion on the merits of the detention decision.' (Resp. 3:9-24) (collecting cases). Here, the Court is guided by the practical considerations underlying the issuance of a stay as well as caselaw within the Ninth Circuit routinely authorizing stays.").

The United States is aware of the Honorable Magistrate Judge Zia M. Faruqui's recent decision denying a motion to stay in *United States v. Abass*, 25-CR-00079 (TSC), ECF No. 12 (April 11, 2025). Judge Faruqui indicated that although magistrate courts typically suspend an order of release pending the United States's request for *de novo* review of the Magistrate Judge's release order, the Court would no longer do so under the four factors articulated in *Nken v. Holder*, 556 U.S. 418 (2009). The United States, however, is not seeking an extraordinary length of time

in which to have the Court consider the merits of a stay which will require significant, detailed briefing, but rather, an emergency stay to present the merits of the requested detention to the district court judge.

Thus, the United States seeks a brief administrative stay of the order of release, and as such, the request should not be analyzed under the *Nken* factors. As this Circuit has noted, "[t]he purpose of [this] administrative stay is to give the court sufficient opportunity to consider the merits of the motion for a stay pending appeal." *Cobell v. Norton*, No. 03-5262, 2004 WL 603456, at *1 (D.C. Cir. Mar. 24, 2004). Such a stay, as the Supreme Court noted recently in *United States v. Texas*, 144 S. Ct. 797, 798 (2024), "buys the court time to deliberate" and does not "typically reflect the court's consideration of the merits." *Id.* at 798 (Barret, J., concurring). District courts have recognized that administrative stays are also applicable in seeking emergency relief, including in the District of Columbia. *See, e.g.*, *Dellinger v. Bessent*, 2025 WL 450488 (D.D.C. Feb. 10, 2025); *National Council of Nonprofits v. Office of Management & Budget*, 2025 WL 314433 (D.D.C. Jan. 28, 2025); *Order, Texas v. Department of Homeland Security*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024). As these courts have recognized, "[t]he authority for an administrative stay arises from the All Writs Act and a court's inherent authority to manage its docket." *Dellinger*, 2025 WL 450488 (quoting *Order, Texas,* No. 24-CV-306, at 2).

II. *De Novo* **Review of the Magistrate's Release Order**

As an initial matter, a defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f)(1). Relevant to this appeal, the United States must establish by clear and convincing

6

evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).

Further, 18 U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the United States's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised.

In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the United States respectfully submits that there is no condition, or combination of conditions, that would assure the safety of any other person or the community.

**A. Nature and Circumstances of the Offense Charged**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention. As described above, Defendant, a convicted felon, was found to be

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

*See* S. Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

8

in possession of: (i) a loaded handgun with 15 bullets in the magazine; (ii) approximately 143.5 grams of crack cocaine with an estimated street value of $14,500; (iii) several plastic baggies; and (iv) over $900 in cash.

What is notable about Defendant's arrest is that law enforcement found similar types of items in the trunk of Defendant's vehicle and on Defendant's person. For example, when officers searched the duffle bag in Defendant's car, they found, among other things, a clear plastic bag containing multiple smaller baggies filled with white and brown rock-like substances. Similarly, when law enforcement searched Defendant incident to arrest, they found, among other things, a clear plastic baggie containing a white and brown rock-like substance, along with multiple smaller baggies containing a similar substance.

This appears to be a classic scenario where we have a Defendant who is dealing narcotics and using a firearm to protect his drug supply. The approximately $900 in cash found on Defendant's person only strengthens this theory. Such a situation is extremely dangerous, and Defendant is keenly aware of that fact considering his history of convictions for comparable conduct. It is also important to consider that the firearm recovered from Defendant's vehicle was stolen. Defendant is a convicted felon multiple times over. He cannot legally purchase a gun. Consequently, it makes sense that he would possess a firearm that was stolen or otherwise not purchased by him.

As a threshold matter, the Court has repeatedly held that possession of a firearm poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-CR-550, 2021 U.S.

Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181, 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from Defendant was loaded and ready to fire, and it was in close proximity to distribution quantities of narcotics.

Given the above, the nature and circumstances of this offense weigh heavily in favor of detention.

### B. Weight of the Evidence Against Defendant

The second factor to be considered, the weight of the evidence, also supports detention. The United States's case against Defendant is robust. The firearm and ammunition were recovered in a duffle bag in the back of Defendant's vehicle, of which he was the driver and sole occupant. In that bag, officers also found male clothing items that matched Defendant's size, along with a clear plastic bag containing multiple smaller baggies filled with 92 grams of a white and brown rock-like substance. Upon searching Defendant incident to arrest, officers discovered similar baggies which contained 51.5 grams of a white and brown rock-like substance. In total, Defendant was found to be in possession of 143.5 grams of crack cocaine, with an estimated street value of $14,500, and over $900 in cash.

The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so, it is in this case, the weight and strength of the evidence increases the prospect that Defendant presents a danger to the community if released.

Again, the weight of the evidence against Defendant for the charged offenses is strong. Defendant was the sole occupant of a motor vehicle that contained a loaded firearm, narcotics, and multiple clear plastic baggies. Defendant also had additional drugs and plastic baggies on his person, along with more than $900 in cash.

**C. History and Characteristics of Defendant**

The third factor, Defendant's history and characteristics, weighs in favor of detention. Since 2002, Defendant has been arrested twenty-six times and has sustained nine convictions. Four of those convictions are for firearms-related offenses, and the remaining five convictions are for drug-related offenses. Defendant has also: (i) been rearrested on pretrial release; (ii) been rearrested on supervised release; and (iii) had his probation revoked on more than half of his prior convictions.

At the detention hearing, the magistrate judge strongly emphasized the fact that Defendant has not received a criminal conviction since 2015. While that is laudable, it does not mean that he will follow the Court's pretrial release conditions and refrain from posing a danger to others. To the contrary, a review of the facts from the charged offense shows that he has not been rehabilitated and that he will continue to involve himself in criminality if released.

As described above, law enforcement initially stopped Defendant's vehicle because he committed several traffic infractions. Once Defendant's car was stopped, the attending officers explicitly asked Defendant if he had any weapons or drugs in the car. Defendant, who presumably had drugs on his person at that time, stated, "No." Defendant did admit, however, that he had just gotten off work and had smoked some marijuana before driving, which is problematic in and of itself. Then, officers found the exact type of illicit items that litter Defendant's criminal record— guns and drugs.

The facts of this matter coupled with Defendant's history demonstrate that he has had numerous chances to be a law-abiding citizen, and that he routinely squanders this opportunity. Defendant lies to law enforcement, and he continually disregards the law and court orders. Consequently, this factor weighs in favor of detention.

### D. Danger to the Community

The fourth and final factor, danger to any person or the community posed by Defendant's release also weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). That danger only increases when you introduce narcotics into the equation, which is again what occurred here.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Defendant poses an obvious and articulable threat to the community, as evidenced by the charged offense, his recidivism, and his failure to obey court orders. After twenty-six arrests and nine convictions, Defendant continues to live a criminal lifestyle. He does not care about the law enforcement personnel that are put in danger because of his actions. He does not care about

innocent bystanders that are exposed to the drugs and guns he carries. And he will continue to disregard these risks if he is released pending trial. *See United States v. Ward*, 63 F.Supp.2d 1203, 1218 (C.D. Cal. 1999) ("Past acts of a defendant are a valid basis with which to predict future conduct.")

### III.    A Third-Party Custodian Cannot Ensure the Safety of the Community.

Magistrate Judge Upadhyaya found that Defendant's grandmother and mother could effectively supervise Defendant and mitigate the danger he presents. The United States respectfully disagrees.

While courts have endorsed third-party custodians, such a custodian makes more sense where a defendant is young and willing to submit to an authority figure. *See United States v. Long*, 2020 WL 2434588 at *2 (W.D. Pa.) ("An authority figure who enters the picture and takes charge of a young and unsophisticated offender provides greater protection to the community than does a third-party custodian who is essentially a peer (or spouse in this case) of the defendant, especially one who is socially affiliated with the defendant during the time the defendant is alleged to have committed very offenses charged."). Defendant is in his forties and is not a child. Furthermore, Defendant's grandmother is eighty-three years old and neither she nor Defendant's mother will be able to control Defendant's actions.

The latter point is not mere speculation. According to Defendant's grandmother, she raised Defendant until he was approximately twenty years old.[2] A review of Defendant's criminal history shows that he sustained six arrests and two convictions during that time. Thus, if the Court were to release Defendant back to his grandmother pending trial, it would be returning Defendant to the

---

[2] Defendant's mother appears to have helped in this endeavor. However, according to her testimony, she lived at the same residence with Defendant's grandmother, and the two individuals helped raise Defendant together at certain points during his life.

14

same environment where he has been able to engage in extensive criminal conduct already.

Defendant's grandmother further testified that her two great-granddaughters (aged 23 and 21) also live in the residence where Defendant would reside upon his release. According to Defendant's grandmother, her great-granddaughters each have significant others. Consequently, if Defendant is released to his grandmother's home, he is going to be surrounded by numerous people on a daily basis. And given his propensity for using firearms and drugs, this means that these individuals are all going to be exposed to some serious dangers. Pretrial detention avoids all these risks and potential complications, and the Court should impose it.

The challenge faced by third party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply, has repeatedly been recognized by courts in this jurisdiction. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (D.D.C. Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (same), *aff'd*, Case No. 22-3045, D.C. Cir. (2022); Order, ECF 54, *United States v. Charles Cunningham*, 23-CR-7 (D.D.C. March 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, ECF 18, *United States v. Trevor Wright*, 22-CR-410 (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role").

The United States does not question the good faith of Defendant's grandmother or mother, and it appreciates that Defendant's family is willing to take on the responsibility of serving as a third-party custodian during the pendency of this case. But it is indisputable that Defendant has engaged in significant crime under their watch, and the proposed third-party custodians are not

going to be able to prevent him from committing more crimes in the future.

Defendant is now before this Court charged with another firearm and drug offense. As Judge Howell explained in *Blackson*: "a benefit of professional detention facilities is the consistency in insuring detention conditions. Defendant's ability to obtain a fully loaded and unregistered gun while on probation, despite the family support he enjoys, underscores that the best intentions and most valiant efforts of defendant's mother to fulfill all the proposed conditions provide no guarantee these conditions will be maintained to the letter for the duration, possibly many months, of defendant's pretrial proceedings." 2023 WL 1778194, at *12.

To convert Defendant's grandmother and mother into his warden is simply not a viable solution for keeping the community safe.

## **CONCLUSION**

Defendant is eligible for pretrial detention, and this is a presumption case. *See* 18 U.S.C. § 3142(e)(3)(A). All four of the Bail Reform Act factors weigh in favor of pretrial detention, and Defendant poses a clear danger to the community. For these reasons, the United States respectfully requests that: (i) Defendant be detained pending trial; (ii) a hearing be set as soon as practicable; and (iii) Magistrate Upadhyaya's release order be stayed pending this Court's review.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:  /s/ *Joshua Satter*
JOSHUA SATTER
NY Bar No: 5477112
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7566
Josh.Satter@usdoj.gov